## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

RUBEN ESCANO,

        Plaintiff,

v.

                                      Case No.: 2:23-cv-00793-GBW-DLM

INSURANCE SUPERMARKET, INC., a
Delaware Corporation; ALEXANDR
DUDAREV, an individual; GUARANTEE
TRUST LIFE INSURANCE COMPANY, an
Illinois Corporation; and JOHN DOES 1–10,

        Defendants.

## SECOND AMENDED COMPLAINT

COMES NOW, Plaintiff Ruben Escano, undersigned, and for his causes of action against the Defendants states and alleges as follows:

### Nature of the Case

1.     This civil action is brought forth in accordance with the United States Telephone Consumer Protection Act ("TCPA"), codified as 47 U.S.C. § 227, and the New Mexico Unfair Practices Act ("NMUPA"), codified as N.M. Stat. Ann. § 57-12, to, *inter alia*, recover statutory damages for automatically-dialed and unsolicited telemarketing calls, and to enjoin such calls.

2.     In enacting the TCPA, "Congress reported, 'many consumers are outraged over the proliferation of intrusive, nuisance telemarketing calls to their homes.'" *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (quoting TCPA, 105 Stat. 2394, note following 47 U.S.C. § 227 (Congressional Findings)).

3.     This second amended complaint is filed in accordance with Fed. R. Civ. P. 15(a)(1)(B) or (a)(2).

## The Parties

4.      Plaintiff RUBEN ESCANO is an individual and citizen of Silver City, New Mexico, with a mailing address of 2311 Ranch Club Road, #2-180, Silver City, New Mexico 88061.

5.      Defendant INSURANCE SUPERMARKET, INC. ("ISI") is a for-profit corporation organized under the laws of the State of Delaware, with a principal address of 1951 Northwest 7th Avenue, Suite 600, Miami, Florida 33136. Its registered agent is Shawn Kehoe at that same address.

6.      Defendant ALEXANDR DUDAREV is a natural person with an address at 1751 Northwest 7th Street, Miami, Florida 33125. He is the principal officer of ISI.

7.      GUARANTEE TRUST LIFE INSURANCE COMPANY ("GTL") is a for-profit corporation organized under the laws of the State of Illinois, with a principal address of 1275 Milwaukee Avenue, Glenview, Illinois 60025. Its registered agent is "Chief Financial Officer" at PO Box 6200 (32314-6200), 200 E. Gaines Street, Tallahassee, Florida 32399-0000.

8.      Defendant John Does 1–10 are individuals or entities that are also liable for the causes of action alleged herein, but whose identities or liabilities are not yet fully known. Such individuals or entities could be agents or principals of the named Defendants. Plaintiff reserves the right to amend this complaint once information arises to properly implicate these parties.

## Jurisdiction

9.      Plaintiff is a resident of New Mexico and was in New Mexico at the time the most recent calls described herein were received.

10.     The Defendants, or their agents, relied on and availed themselves of the telecommunications infrastructure of New Mexico when transmitting the calls in question.

11.     Defendants, or their agents, offer and market their products or services to residents of New Mexico using means which they know could reach residents of New Mexico, and in the manner in which Defendants, or their agents, offered and marketed their products or services to Plaintiff as alleged herein.

12.     Jurisdiction is proper because the TCPA is a federal law.

## Causes of Action

### The Telephone Consumer Protection Act

13.     The FCC has long made clear that "the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules and Regulations Implementing the TCPA*, 10 FCC Rcd. 12391, 12397, ¶ 13 (1995).

14.     The FCC has instructed that defendants may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6588, ¶ 37 (2013).

15.     The FCC has rejected a narrow view of TCPA liability, including the assertion that liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at 6587 n.107.

16.    The FCC's 2013 declaratory ruling made clear that even when sellers, such as the Defendants, do not initiate calls, they "may be held vicariously liable for certain third-party telemarketing calls . . . under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification." *Id.* at ¶ 28.

17.    "As the FTC has explained in its Compliance Guide, 'taking deliberate steps to ensure one's own ignorance of a seller or telemarketer's Rule violations is an ineffective strategy to avoid liability.'" *FTC v. Chapman*, 714 F.3d 1211, 1216–1219 (10th Cir. 2013).

18.    Called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *In re DISH Network*, 28 FCC Rcd. at 6592–593, ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

19.    A TCPA defendant can be held liable if it "had knowledge of facts [about a telemarketer] that would have led a reasonable person to investigate further, but the [defendant] ratified without further investigation." *See McCurley v. Royal Seas Cruises, Inc.*, No. 21-55099 (9th Cir. Apr. 5, 2022) (quoting Restatement (Third) of Agency § 2.03).

20.    "Calls placed by an agent of the telemarketer are treated as if the telemarketer itself placed the call." *Newell v. Strategic Admin. Grp., Inc.*, No. 2:20-CV-00967-JDW, 2020 WL 12770854, at *1 (E.D. Pa. May 6, 2020) (quoting *In re Rules and Regulations Implementing the TCPA*, 10 FCC Rcd. 12391, 12397, ¶ 13 (1995)).

## Introduction: The Telemarketing Calls at Issue

21.     Beginning August 11, 2021 and continuing to January 14, 2022, Plaintiff received at least twenty automatically-dialed and unsolicited telephone calls (hereinafter, "the calls") to his cell phone, which is connected to phone numbers ending in -8938 and -0915.

22.     During at least one call, a phone representative acknowledged that the call was made in violation of the TCPA and demanded that Plaintiff *retroactively consent* to the TCPA violation.

23.     During the calls, the callers attempted to avoid legal reproach by "spoofing" the phone numbers from which they called so that Plaintiff's cell phone, and any other telephones called, would show inaccurate caller ID information, and by instructing their employees not to immediately communicate the true name of the company calling even when Plaintiff, and any other telephone subscribers that were called, inquired as to the true name of the company.

24.     Plaintiff's cell phone number ending in -8938 has been listed on the Federal Trade Commission's National Do Not Call Registry for over a decade.  The FTC's National Do Not Call Registry is available to telemarketers wishing to operate within the law.

25.     The content of the calls was substantially similar.  In particular, the sales pitches and intonations of the live phone representatives were similar.  All of the calls were sales calls for life and health insurance.  Additionally, at least one phone representative from each call that Plaintiff stayed on the line for, asked Plaintiff for his age, zip code, and full name.

26.     Accordingly, a reasonable person would identify the calls as coming from the same entity.

27.     During at least one call, including a call on September 3, 2021, Plaintiff spoke to a phone representative who said she was calling from "Insurance Supermarket."

28.     During that call, an ISI phone representative offered several choices of GTL's insurance plans.  The phone representative also sent Plaintiff an email with GTL's branding and logo (as well as ISI's branding and logo) and four options of GTL's insurance plans with monthly premiums and coverage limits listed.

29.     The calls to Plaintiff were made to sell, among other things, GTL's life and health insurance plans, for which ISI earned a commission.

## Relevant Facts and Law

30.     At no time, during the period in question, did Defendants have any prior business or contractual relationship with Plaintiff.

31.     Accordingly, Defendants did not have an "established business relationship," as defined by 47 C.F.R. § 64.1200(f)(6) and N.M. Stat. Ann. § 57-12-22(D)(1)(a), with Plaintiff.

32.     The calls were initiated for the purpose of encouraging the purchase of goods or services.

33.     Defendants have not received from Plaintiff any prior express invitation or permission to call him.

34.     Accordingly, the calls meet the definition of a "telephone solicitation" under 47 U.S.C. § 227(a)(4) and N.M. Stat. Ann. § 57-12-22(D)(4).

35.     In transmitting the calls, Defendants utilized equipment that has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers.

36.     Accordingly, the equipment utilized was an "automatic telephone dialing system" (hereinafter, "ATDS") as defined by 47 U.S.C. § 227(a)(1).

37.     The telemarketing scheme used predictive dialer technology to transmit calls en-masse to telephone subscribers across the United States.  A predictive dialer is a type of ATDS that, given a set number of phone representatives, "predicts" the maximum number of telephone subscribers that can be called at once in order for the call to be answered within a set period of time by a live phone representative.

38.     The TCPA and its prohibitions apply, inclusively, to telemarketing calls transmitted from outside the United States. *See* 47 U.S.C § 227(b)(1).

39.     Plaintiff's cell phone is a personal phone.

40.     Accordingly, Plaintiff is a "residential subscriber" as defined by 47 U.S.C. § 64.2305(d).

41.     The calls were initiated on behalf of the Defendants, and/or by the Defendants themselves, for the purpose of encouraging the purchase or rental of, or investment in, the Defendants' respective property, goods, or services.

42.     Accordingly, the Defendants are "sellers" under 47 CFR § 64.1200(f)(10) and/or "telemarketers" under 47 CFR § 64.1200(f)(12).

43.     Title 47 U.S.C. § 64.2305(d) applies inclusively "to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers[.]" *Mestas v. CHW Grp.*, 508 F. Supp. 3d 1011, 1028 (D.N.M. 2020).

**Concrete Injury**

44.     The calls caused Plaintiff concrete injuries in fact.

45.     The calls caused a partial depletion of the charge of Plaintiff's cell phone battery, a partial depletion of the lifespan of the phone's display, and unwarranted wear and tear for at least both of those components.

46.     The calls aggravated Plaintiff, disrupted his days, and required him to divert attention away from his work and personal life to tend to and answer such unwarranted intrusions of his time.

47.     Accordingly, the calls were repeated invasions of Plaintiff's privacy that required him to divert attention away from his work and personal life to tend to and answer such intrusions of his time.

## Defendants Ratified the Calls

48.     Defendants materially benefited from the telemarketing scheme at issue and stood to materially benefit from the calls to Plaintiff.

49.     Defendants knew, or should have known, the calls were made in the manner as alleged herein.  However, neither took effective action to correct such conduct or investigate whether such conduct was taking place, despite having good reason for investigating.

50.     Defendants continued to accept the benefit of the telemarketing scheme which they knew, or should have known, was being conducted in the manner alleged herein.

51.     Accordingly, Defendants are liable for the calls under the theory of ratification.

## Mr. Dudarev is Liable for The Calls

52.     Mr. Dudarev entered into agreements on behalf of ISI that led to the telephone calls at issue.

53.     At all times relevant, ISI acted under the direction and control of Mr. Dudarev. Mr. Dudarev is also an employee of ISI.

54.     Accordingly, Mr. Dudarev is vicariously liable for the calls under the theory of respondeat superior.

## ISI Operates on behalf of GTL

55.   ISI operated on behalf of GTL, and under its direct, implied, or apparent authority to sell GTL's insurance plans.

56.   GTL knew that the volume of insurance enrollments produced by ISI could not be achieved merely by calling customers who had consented to be called by GTL or ISI.

57.   GTL knew that the volume of insurance enrollments produced by ISI could not be achieved merely by calling customers without using an ATDS.

58.   GTL knew or should have known of ISI's violative business practices. Nonetheless, GTL paid ISI sales commissions for the insurance enrollments produced by ISI.

59.   Accordingly, GTL is vicariously liable for the calls because they were transmitted in a manner as alleged herein with the ratification of GTL.

60.   GTL authorized ISI sales persons to represent themselves as agents of GTL to potential customers.

61.   Accordingly, GTL is vicariously liable for the calls under the theory of apparent authority.

62.   GTL had an agreement with ISI whereby GTL would pay ISI for the customers it enrolled in GTL's insurance plans.  GTL paid ISI accordingly.

## Alternative Liability

63.   Plaintiff alternatively alleges that the Defendants are liable for the calls because they made the calls.

64.   Plaintiff alternatively alleges that the Defendants are liable for the calls because any of the Defendants directed and controlled another Defendant, or other entity or individual, to place the calls in the manner alleged.

65.     Accordingly, Defendants are alternatively liable under the theory of actual agency.

**The Calls**

66.     On August 11, 2021, Plaintiff was called with a prerecorded or artificial message, from the phone number 508-379-4399.

67.     A second time on August 11, 2021, Plaintiff was called.

68.     On August 16, 2021, Plaintiff was called from the phone number 314-912-1250.

69.     On August 17, 2021, Plaintiff was called from the phone number 502-947-1377.

70.     On August 18, 2021, Plaintiff was called from the phone number 610-424-6329.

71.     On August 19, 2021, Plaintiff was called with a prerecorded or artificial message, from the phone number 978-312-8594.

72.     On August 24, 2021, Plaintiff was called with a prerecorded or artificial message.

73.     On August 26, 2021, Plaintiff was called with a prerecorded or artificial message, from the phone number 641-209-2779.

74.     Again on August 26, 2021, Plaintiff was called with a prerecorded or artificial message, from the phone number 920-291-3211.

75.     On August 27, 2021, Plaintiff was called with a prerecorded or artificial message, from the phone number 845-299-6816.

76.     On August 30, 2021, Plaintiff was called with a prerecorded or artificial message, from the phone number 802-885-6816.

77.     On September 3, 2021, Plaintiff was called with a prerecorded or artificial message, from the phone number 574-465-1377.

78.     Again on September 3, 2021, Plaintiff was called with a prerecorded or artificial message, from the phone number 504-732-3660.

79.     On September 8, 2021, Plaintiff was called with a prerecorded or artificial message, from the phone number 409-228-7294.

80.     On September 13, 2021, Plaintiff was called.

81.     On September 21, 2021, Plaintiff was called with a prerecorded or artificial message, from the phone number 385-365-0664.

82.     Again on September 21, 2021, Plaintiff was called from the phone number 802-449-3610.

83.     On September 23, 2021, Plaintiff was called with a prerecorded or artificial message, from the phone number 816-339-0683.

84.     On September 29, 2021, Plaintiff was called with a prerecorded or artificial message, from the phone number 802-448-8807.

85.     On January 14, 2022, Plaintiff was called from the phone number 432-278-9847.

## Counts

### COUNT ONE
### Violations of 47 U.S.C. § 227(b)(1)(A)(iii): Utilizing an ATDS to transmit a telephone call to a cell phone.

86.     Paragraphs 1–85 are hereby incorporated by reference.

87.     When Plaintiff was called on the dates alleged *supra*, the callers willfully or knowingly utilized an ATDS to do so.

88.     In so doing, Defendants willfully or knowingly violated 47 U.S.C. § 227(b)(1)(A)(iii).

### COUNT TWO
### Violations of 47 U.S.C. § 227(b)(1)(B): Utilizing an artificial or prerecorded voice to deliver a message to a telephone.

89.     Paragraphs 1–85 are hereby incorporated by reference.

90.     When Plaintiff was called on thirteen dates indicated *supra*, the callers willfully or knowingly utilized an artificial or prerecorded voice to deliver a message to Plaintiff's phone.

91.     In so doing, Defendants willfully or knowingly violated 47 U.S.C. § 227(b)(1)(B).

## COUNT THREE
**Violations of 47 U.S.C. § 227(b)(1)(D): Using an ATDS in such a way that two or more telephone lines of a multi-line business are engaged simultaneously.**

92.     Paragraphs 1–85 are hereby incorporated by reference.

93.     When Plaintiff was called on the dates alleged *supra*, the callers willfully or knowingly utilized an ATDS in such a way that two or more telephone lines of a multi-line business were engaged simultaneously.

94.     In so doing, Defendants willfully or knowingly violated 47 U.S.C. § 227(b)(1)(D).

## COUNT FOUR
**Violations of 47 C.F.R. § 64.1200(a)(7)(i): Allowing a more than two-second delay before responding to answered call.**

95.     Paragraphs 1–85 are hereby incorporated by reference.

96.     When Plaintiff was called on the dates alleged *supra*, except on September 29, 2021 and January 14, 2022, the callers willfully or knowingly allowed more than two seconds of silence before responding to Plaintiff's completed greeting.

97.     In so doing, Defendants willfully or knowingly violated 47 C.F.R. § 64.1200(a)(7)(i).

## COUNT FIVE
**Violations of 47 C.F.R. § 64.1200(c)(2): Calling a telephone number on the Federal Trade Commission's National Do Not Call Registry.**

98.     Paragraphs 1–85 are hereby incorporated by reference.

99.     When Plaintiff was called on the dates alleged *supra*, the callers willfully or knowingly called a phone number registered on the Federal Trade Commission's National Do Not Call Registry and which the callers knew or should have known was registered as such.

100.    In so doing, Defendants willfully or knowingly violated 47 C.F.R. § 64.1200(c)(2).

## COUNT SIX
### Violations of 47 C.F.R. § 64.1200(d)(1)-(2): Failing to have a written policy for properly maintaining an internal do-not-call list.

101.    Paragraphs 1–85 are hereby incorporated by reference.

102.    Defendants and the callers either failed to institute a written policy for maintaining an internal do-not-call list, or failed to train their phone representatives and other personnel in the existence and proper use of an internal do-not-call list.

103.    In so doing, during each of the calls alleged *supra*, Defendants willfully or knowingly violated 47 C.F.R. § 64.1200(d)(1)-(2).

## COUNT SEVEN
### Violations of 47 C.F.R. § 64.1200(d)(4): Failing to provide contact information for the sponsor of call.

104.    Paragraphs 1–85 are hereby incorporated by reference.

105.    When Plaintiff was called on the dates alleged *supra*, the callers failed to provide Plaintiff with a telephone number or address at which Plaintiff could contact the sponsor of the call—*i.e.*, the Defendants—without requiring a sale first be made.

106.    In so doing, Defendants willfully or knowingly violated 47 C.F.R. § 64.1200(d)(4).

## COUNT EIGHT
### Violations of N.M. Stat. Ann. § 57-12-22(A): Utilizing an ATDS with a prerecorded message to transmit a telephone call to a cell phone.

107.    Paragraphs 1–85 are hereby incorporated by reference.

108.    Neither the Defendants nor the callers have received any consent from Plaintiff to transmit prerecorded messages to him.

109.    When Plaintiff was called on the thirteen dates indicated *supra*, the callers willfully utilized an ATDS and prerecorded message to do so.

110.    In so doing, Defendants willfully violated N.M. Stat. Ann. § 57-12-22(A).

## COUNT NINE
### Violations of N.M. Stat. Ann. § 57-12-22(B)(1): Failing to disclose the name of the sponsor of a call within 15 seconds.

111.    Paragraphs 1–85 are hereby incorporated by reference.

112.    When Plaintiff was called on the dates alleged *supra*, although Plaintiff stayed on the line for at least 15 seconds and the calls lasted longer than 15 seconds, the callers never disclosed the true name of the company calling or the company's sponsor during those initial 15-second periods.

113.    The callers thereby willfully failed to disclose the name of the sponsor of the phone call within 15 seconds of Plaintiff answering the call.

114.    In failing to do so, Defendants willfully violated N.M. Stat. Ann. § 57-12-22(B)(1).

## COUNT TEN
### Violations of N.M. Stat. Ann. § 57-12-22(B)(7): Initiating a call using an ATDS that allows for a more than two-second delay when call is answered.

115.    Paragraphs 1–85 are hereby incorporated by reference.

116.    When Plaintiff was called on the dates alleged *supra*, the callers willfully utilized an ATDS that dials and engages the telephone numbers of more than one person at a time but allows the possibility of a called person not being connected to the calling person for a period greater than two seconds.

117.    In so doing, Defendants willfully violated N.M. Stat. Ann. § 57-12-22(B)(7).

## COUNT ELEVEN
### Violations of N.M. Stat. Ann. § 57-12-22(C)(1): Making a telephone solicitation to a telephone number on the Federal Trade Commission's National Do Not Call Registry.

118.    Paragraphs 1–85 are hereby incorporated by reference.

119.    When Plaintiff was called on the dates alleged *supra*, the callers willfully transmitted a telephone solicitation to a phone number registered on the Federal Trade Commission's National Do Not Call Registry.

120.    In so doing, Defendants willfully violated N.M. Stat. Ann. § 57-12-22(C)(1).

## COUNT TWELVE
### Violations of N.M. Stat. Ann. § 57-12-22(C)(2): Circumventing a Caller ID service.

121.    Paragraphs 1–85 are hereby incorporated by reference.

122.    By the callers spoofing its phone numbers when it called Plaintiff's cell phone on the dates alleged *supra*, the callers willfully and intentionally circumvented Plaintiff's use of his caller ID service.

123.    In so doing, Defendants willfully violated N.M. Stat. Ann. § 57-12-22(C)(2).

## COUNT THIRTEEN
### Trespass to Chattels

124.    Paragraphs 1–85 are hereby incorporated by reference.

125.    The calls to Plaintiff substantially interfered with, disturbed, and deprived him of the use and enjoyment of his cell phone.

126.    The callers knew, or should have known, that their calls to Plaintiff's phone, and the phones of other telephone subscribers called, would result in such interference and disturbance to the use of such personal property.

127. When Plaintiff was called on the dates alleged *supra*, the callers willfully or knowingly utilized an artificial or prerecorded voice to deliver a message which did not state the true identity of the business calling.

128. Accordingly, Defendants willfully or knowingly violated 47 C.F.R. § 64.1200(b)(1).

129. When Plaintiff was called on the dates alleged *supra*, the callers willfully or knowingly utilized an artificial or prerecorded voice to deliver a message which did not state the telephone number of the business calling.

130. Accordingly, Defendants willfully or knowingly violated 47 C.F.R. § 64.1200(b)(2).

131. The callers structured their telemarketing operation to shirk regulatory requirements (including, 47 C.F.R. § 64.1200(b)(1)-(2)) that, if followed, would have allowed Plaintiff, and any other telephone subscribers called, to identify the caller and sponsor of the call, contact the sponsor of the calls, and prevent further calls. This is because the callers knew they were causing a disturbance to the personal property of telephone subscribers throughout the country, including Plaintiff.

132. Accordingly, Defendants are liable to Plaintiff under the theory of trespass to chattels.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment against Defendants as follows:

    A. pursuant to 47 U.S.C. § 227(b)(3)(B) and § 227(c)(5)(B), damages for each of the violations of the TCPA committed by Defendants;

B. pursuant to 47 U.S.C. § 227(b)(3) and § 227(c)(5), trebled damages for each of the willful or knowing violations of the TCPA committed by Defendants;

C. pursuant to N.M. Stat. Ann. § 57-12-10(B), damages for each of the violations of the NMUPA committed by Defendants;

D. pursuant to N.M. Stat. Ann. § 57-12-10(B), damages for each of the willful violations of the NMUPA committed by Defendants;

E. damages in accordance with the common law theory of trespass to chattels;

F. for punitive damages sufficient to punish Defendants for their attempts to avoid legal reproach;

G. pursuant to 47 U.S.C. § 227(b)(3)(A), § 227(c)(5)(A), and N.M. Stat. Ann. § 57-12-10(A), for an injunction ordering Defendants to cease their telemarketing calls to Plaintiff;

H. pursuant to N.M. Stat. Ann. § 57-12-10(C), for Plaintiff's reasonable and necessary attorney's fees and costs;

I. for pre and post-judgment interest;

J. and for all other relief to which Plaintiff is justly entitled under New Mexico or Federal law.

\* \* \*

Dated this 5th day of October, 2023.

Respectfully Submitted,

By: _____

**Ruben J. Escano,** *pro se*

2311 Ranch Club Road
Suite #2-180
Silver City, NM 88061
(201) 527-8938
rubenescano@gmail.com

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that on this 5th day of October, 2023, a copy of the foregoing second amended complaint was served on the Defendants by emailing to Linn Gillen via email at Linn.Gillen@jacksonlewis.com.

Dated this 5th day of October, 2023.

By: _____

**Ruben J. Escano,** *pro se*

PRESS FIRMLY TO SEAL

PRESS FIRMLY TO SEAL

**Retail**

U.S. POSTAGE PAID
PME 2-Day
ORLANDO, FL 32862
OCT 05, 2023

**$28.75**

R2304N117279-11

88001

RDC 07

EI 287 460 944 US

# PRIORITY
## MAIL
# EXPRESS®

**FLAT RATE**
**ENVELOPE**
ONE RATE ■ ANY WEIGHT

To schedule free Package Pickup,
scan the QR code.



USPS.COM/PICKUP

PS10001000006

EP13F July 2022

◄ PEEL FROM THIS CORNER

■ For pickup or USPS Tracking™, visit USPS.com or call 800-222-1811.
■ $100.00 insurance included.

UNITED STATES
POSTAL SERVICE®

PRIORITY
MAIL
EXPRESS®

**CUSTOMER USE ONLY**

**FROM:** (PLEASE PRINT)

Ruben Escano
2311 Ranch Club Rd. J
Silver City, NM

**DELIVERY OPTIONS** (Customer Use Only)
□ SIGNATURE REQUIRED **Note:** The mailer must check the "Signature Required" box if the mailer: 1) Requires the addressee's signature; OR 2) Purchases additional insurance; OR 3) Purchases COD service; OR 4) Purchases Return Receipt service. If the box is not checked, the Postal Service will leave the item in the addressee's mail receptacle or other secure location without attempting to obtain the addressee's signature on delivery.
**Delivery Options**
□ No Saturday Delivery (delivered next business day)
□ Sunday/Holiday Delivery Required (additional fee, where available)*
*Refer to USPS.com® or local Post Office™ for availability.

**TO:** (PLEASE PRINT)    PHONE ( )

United States District Court
Court Clerk
100 N. Church Street
Las Cruces, NM 88001

ZIP+4® (U.S. ADDRESSES ONLY)
8 8 0 0 1 -

LAS CRUCES, NEW MEXICO

FILED
MITCHELL R. ELFERS
CLERK OF COURT
OCT 10 2023
23-180

**PAYMENT BY ACCOUNT** (if applicable)
USPS® Corporate Acct. No.    Federal Agency Acct. No. or Postal Service™ Acct. No.

**ORIGIN (POSTAL SERVICE USE ONLY)**

| PO ZIP Code | Day | | | |
|---|---|---|---|---|
| 32862 | □ 1-Day | ☑ 2-Day | □ Military | □ DPO |

| Date Accepted (MM/DD/YY) | Scheduled Delivery Date (MM/DD/YY) | Postage |
|---|---|---|
| 10/5/23 | 10/7/23 | $ 28.75 |

| Time Accepted | Scheduled Delivery Time | Insurance Fee | COD Fee |
|---|---|---|---|
| 3:48 □ AM ☑ PM | ☑ 6:00 PM | $ | $ |

| Special Handling/Fragile | Sunday/Holiday Premium Fee | Return Receipt Fee | Live Animal Transportation Fee |
|---|---|---|---|
| $ | $ | $ | $ |

| Weight | ☑ Flat Rate | Acceptance Employee Initials | Total Postage & Fees |
|---|---|---|---|
| lbs. ozs. | | | $ 28.75 |

**DELIVERY (POSTAL SERVICE USE ONLY)**

| Delivery Attempt (MM/DD/YY) | Time | Employee Signature |
|---|---|---|
| | □ AM □ PM | |

| Delivery Attempt (MM/DD/YY) | Time | Employee Signature |
|---|---|---|
| | □ AM □ PM | |

LABEL 11-B, MAY 2021    PSN 7690-02-000-9996





UNITED STATES
POSTAL SERVICE