IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

RUBEN J. ESCANO,

       Plaintiff,

v.                                                                   No. 2:23-cv-0793 MIS/DLM

INSURANCE SUPERMARKET INC.,
a Delaware Corporation; ALEXANDR
DUDAREV, an individual; GUARANTEE
TRUST LIFE INSURANCE COMPANY,
an Illinois Corporation; and John Does 1–10,

       Defendants.

## **PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

Plaintiff Ruben Escano alleges that Defendants Insurance Supermarket Inc. (ISI), Guarantee Trust Life Insurance Company (GTL), Alexandr Dudarev, and/or Defendants' employees made unsolicited telemarketing calls to his personal cell phone in violation of the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227, and the New Mexico Unfair Practices Act (NMUPA), N.M. Stat. Ann. § 57-12-22. He seeks statutory and common law damages and to enjoin future telemarketing calls.

Defendants move to dismiss and argue that Escano fails to plausibly allege Defendants are liable for the calls or that they utilized an "automatic telephone dialing system." (Doc. 13.) Having considered the parties' arguments and the relevant law, the undersigned finds that Escano plausibly alleges facts to support his vicarious liability claims against ISI and GTL and recommends denying in part the motion with respect to these claims. The undersigned finds Escano fails to support the

1

vicarious and direct liability claims against Dudarev and the direct liability claim against GTL and thus recommends granting in part the motion and dismissing these claims.[1]

I.    **Factual Background**

The Court recites the facts relevant to this motion as alleged in the Second Amended Complaint (Doc. 9) and accepts as true all well-pleaded factual allegations, viewing them in a light most favorable to Escano. *See Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013).

GTL is a corporation that offers life and health insurance plans. (*See* Doc. 9 ¶¶ 7, 28, 55.) ISI is a corporation that "operated on behalf of GTL . . . to sell GTL's insurance plans." (*Id.* ¶¶ 5, 55.) "GTL authorized ISI salespersons to represent themselves as agents of GTL to potential customers" and "paid ISI sales commissions for the insurance enrollments produced by ISI." (*Id.* ¶¶ 58, 60, 62.) Dudarev is the principal officer and an employee of ISI. (*Id.* ¶ 52.) Escano asserts Dudarev "entered into agreements on behalf of ISI that led to the telephone calls at issue." (*Id.* ¶¶ 6, 53.) He further alleges that ISI acted under Dudarev's direction and control. (*Id.* ¶ 53.)

Escano registered his cell phone number on the Federal Communications Commission's (FCC) National Do Not Call Registry over a decade ago. (*Id.* ¶ 24.) Between August 11, 2021, and January 14, 2022, Escano received at least 20 unsolicited telemarketing calls to his personal cell phone number. (*Id.* ¶¶ 21, 39.) Of the 20 calls, 13 began "with a prerecorded or artificial message[,]" and all but two calls began with "more than two seconds of silence before" the representative responded to Escano's greeting. (*See* Doc. 9 ¶¶ 66–85, 96.)

Escano alleges that the content of the calls "was substantially similar" in that they were all "made to sell, among other things, GTL's life and health insurance plans . . . ." (*Id.* ¶¶ 25, 29.) He

---

[1] United States District Judge Margaret I. Strickland referred this case to the undersigned Magistrate Judge "to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case." (Doc. 19.)

further asserts that "the sales pitches and intonations of the live phone representatives were similar." (*Id.* ¶ 25.) He asserts that "a reasonable person would identify the calls as coming from the same entity." (*Id.* ¶ 26.)

During "each call that [Escano] stayed on the line for, [a representative] asked [him] for his age, zip code, and full name." (*Id.* ¶ 25.) During at least one call on September 3, 2021, the representative told Escano that she was calling from "Insurance Supermarket." (*Id.* ¶ 27.) She offered Escano "several choices of GTL's insurance plans" and sent him an email that contained the branding and logo of both GTL and ISI, along with "four options of GTL's insurance plans with monthly premiums and coverage limits listed."[2] (*Id.* ¶ 28.) Escano had no prior business relationship with Defendants, nor had he invited them to call him. (*Id.* ¶¶ 30, 33.)

Escano alleges Defendants used an "automatic telephone dialing system" (ATDS) to make the calls and "spoofed" the phone numbers they called from to show inaccurate caller ID information. (*Id.* ¶¶ 23, 35–36.) Defendants further "instruct[ed] their employees not to immediately communicate the true name of the company calling . . . ." (*Id.*) In at least one of the phone calls, the "representative acknowledged that the call was made in violation of the TCPA and demanded that [Escano] *retroactively consent* to the TCPA violation." (*Id.* ¶ 22.) Escano alleges that "GTL knew that the volume of insurance enrollments produced by ISI could not be achieved merely by calling customers who had consented to be called by GTL or ISI" or "by calling customers without using an ATDS." (*Id.* ¶¶ 56–57.)

## II. Legal Standards

Escano's "pro se . . . pleadings are to be construed liberally and held to a less stringent

---

[2] Escano attaches a copy of the email to his response brief (Doc. 17-A); however, the Court need not consider the attachment to decide the motion to dismiss.

standard than formal pleadings drafted by lawyers." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). Still, the Court may not "serv[e] as the litigant's attorney in constructing arguments and searching the record." *Id.* (citation omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Emps.' Ret. Sys. of R.I. v. Williams Cos.*, 889 F.3d 1153, 1161 (10th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quotation omitted). The Court will "accept as true 'all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff.'" *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013) (quotation omitted).

**III.   Analysis**

Both the TCPA and the NMUPA "generally prohibit[] robocalls to cell phones and home phones." *See Escano v. RCI LLC* ("*RCI*"), No. CV 22-360 DHU/GJF, 2022 WL 17251273, at *13 (D.N.M. Nov. 28, 2022), *R&R adopted*, 2023 WL 34525 (D.N.M. Jan. 4, 2023) (quoting *Barr v. Am. Ass'n of Pol. Consultants*, 140 S. Ct. 2335, 2343 (2020)); *see also* 47 U.S.C. § 227; N.M. Stat. Ann. § 57-12-22. Escano alleges that Defendants violated the TCPA and NMUPA by repeatedly calling his personal cell phone over a period of six months. (*See* Doc. 9.) Defendants argue that Escano fails to plausibly allege: (1) Dudarev is liable for the calls; (2) GTL is liable for the calls; (3) "ISI is the entity that made all of the subject calls"; and (4) "ISI utilized ATDS to make <u>all</u> of the subject calls." (Doc. 13 at 7–11, 14.)

4

### A.   Escano plausibly alleges that ISI contacted him using an ATDS.

Defendants argue that Escano fails to demonstrate ISI used an ATDS to make all 20 calls. (*Id.* at 14.) They offer several different reasons to support their conclusion: (1) Escano alleges that only "13 of the 20 calls had artificial or prerecorded messages"; (2) Escano offers conclusory statements to show that ISI used a predictive dialer; (3) he offers conclusory statements to demonstrate that ISI "coordinated with the other Defendants to hide the identity of the entity making the subject calls"; and (4) Escano concludes "that the sheer volume of the calls somehow indicates the use of an ATDS." (*Id.*) The Court finds Defendants' position, which they fail to support with reference to any authority, unpersuasive.

"The TCPA defines an ATDS as 'equipment which has the capacity . . . to store or produce telephone numbers to be called, using a random or sequential number generator; and . . . to dial such numbers.'" *Escano v. Symmetry Fin. Grp. of N. Carolina, LLC* ("*Symmetry*"), No. 2:21-CV-0884 RB-GBW, 2022 WL 2072875, at *3 (D.N.M. June 9, 2022) (quoting 47 U.S.C. § 227(a)(1)). "Although alleging specific details regarding a defendant's use of an ATDS can pose a challenge prior to conducting discovery, courts nonetheless have held that to sustain a claim under the TCPA, a plaintiff must plead more than the bare allegation that an ATDS was used." *Id.* (quoting *Gonzalez v. HOSOPO Corp.*, 371 F. Supp. 3d 26, 34 (D. Mass. 2019) (quotation marks omitted)) (citing *Dendy v. Chartrand*, No. 18-CV-1118-WPJ, 2019 WL 719762, at *3 (D.N.M. Feb. 20, 2019) ("The Court recognizes the difficulty of alleging details about an ATDS before discovery."); *Callier v. MultiPlan, Inc.*, No. EP-20-CV-00318-FM, 2021 WL 8053527, at *17 (W.D. Tex. Aug. 26, 2021) (noting that "it is impracticable to expect plaintiffs to plead specific facts about a telemarketer's technological processes before they have the benefit of discovery")). "In light of these tensions, a plaintiff is permitted to rely on indirect allegations, such as the content of the

message, the context in which it was received, and the existence of similar messages to raise an inference that an ATDS was used." *Id.* (quoting *Gonzalez*, 371 F. Supp. 3d at 34–35).

The Court finds instructive *RCI* and *Symmetry*, two separate lawsuits Escano previously filed in this district. The defendants in both cases challenged whether Escano alleged facts sufficient to support a finding they used an ATDS. In *RCI*, the Court found Escano sufficiently alleged the defendants used an ATDS where he averred: the defendants made at least 27 automatically dialed and unsolicited telemarketing calls to him, "the calls began with similar pre-recorded messages," the numbers were "spoofed," "the employees were instructed not to immediately communicate the true name of the company," he stated during at least three calls his desire not to be contacted again, he did not have a prior relationship with the defendants, the defendants used predictive dialer technology, and the defendants agreed to make automatically-dialed calls "to telephone subscribers across the United States." *RCI*, 2022 WL 17251273, at *15 (quotation marks and citations omitted). Similarly, in *Symmetry*, the Court found Escano adequately alleged the defendants used an ATDS where the facts showed: Escano had no previous relationship with the defendants, and the calls began with either "an artificial or prerecorded message[,]" "a digital beeping sound[,] and/or at least three seconds of silence before a representative came on the line." 2022 WL 2072875, at *3 (quotation marks and citations omitted).

Here, Escano asserts facts to establish the general content of the phone calls was similar: he alleges all "calls were sales calls for life and health insurance[,]" and "the sales pitches and intonations of the live phone representatives were similar." (Doc. 9 ¶ 25.) He alleges the calls were unsolicited and that he did not have any prior business relationship with Defendants, nor did he give them permission to call him. (*Id.* ¶¶ 21, 31, 33.) During the calls in which Escano spoke with live representatives, they all asked for his age, zip code, and full name, and representatives were

6

instructed "not to immediate communicate the true name of the company . . . ." (*Id.* ¶¶ 23, 25.)

He also shows the context of the calls was similar: he asserts all calls were automatically dialed and used "spoofed" phone numbers so that the recipient's phone would show inaccurate caller ID information, and for all but two calls "the callers willfully or knowingly allowed more than two seconds of silence before responding to [his] completed greeting." (*Id.* ¶¶ 21, 23, 96.) The allegations related to the period of silence at the beginning of the call is meant to support a showing that Defendants used a "predictive dialer" (*id.* ¶ 37), which "is a type of ATDS that, given a set number of phone representatives, 'predicts' the maximum number of telephone subscribers that can be called at once in order for the call to be answered within a set period of time by a live phone representative—after a prerecorded message is played." *See RCI*, 2022 WL 17251273, at *3. Finally, Escano alleges that GTL knew ISI could only produce "the volume of insurance enrollments" by using an ATDS. (Doc. 9 ¶ 57.)

In their reply brief, Defendants concede that Escano's allegations regarding the ATDS are sufficient except for the two phone calls in which there was no period of silence. (*See* Doc. 20 at 5 ("Defendants acknowledge that [Escano's] fairly low burden was met with respect to the subject calls in which he alleges that there was a moment or two of silence before a live representative answered").) They disagree, however, that Escano meets his burden for the two phone calls that did not involve a moment of silence. (*See id.*) Escano addressed this in his response brief and contends that "this is merely representative of the natural statistical variation inherent in a predictive dialer." (Doc. 17 at 13.) At this stage, assuming the phone calls were otherwise similar in context and content to the other calls, the Court sides with Escano. Defendants are free to raise this issue again on summary judgment. In sum, the allegations, considered as a whole and in a light most favorable to Escano, demonstrate that the content and context of the 20 calls were similar

7

and are thus "sufficient to support a plausible inference that [ISI] used an ATDS and to put Defendants on notice of Escano's claims." *See Symmetry*, 2022 WL 2072875, at *3. The Court recommends denying the motion on this issue.

### B. Escano sufficiently alleges that ISI made the calls.

Defendants argue that Escano's allegations are too amorphous and conclusory to adequately state a claim that ISI made the telemarketing calls. (Doc. 13 at 11.) Defendants emphasize that Escano spoke to a representative from "Insurance Supermarket" on only one phone call, and it was during this phone call that the representative emailed Escano insurance plan information bearing GTL's and ISI's branding and logos. (*See id.* at 13 (discussing Doc. 9 ¶¶ 27–28).)

This single phone call is not the end of the story. Regarding the 20 calls, Escano alleges "[t]he content of the calls was substantially similar" as *all* "calls were sales calls for life and health insurance[,]" and "the sales pitches and intonations of the live phone representatives were similar." (Doc. 9 ¶ 25.) Moreover, all calls were made by callers who "spoofed" the phone numbers, the representatives were instructed not to "immediately communicate the true name of the company calling[,]" and on those calls Escano stayed on the line for, the representative asked him for the his name, age, and zip code. (*See id.* ¶¶ 23, 25.) Escano avers that "a reasonable person would identify the calls as coming from the same entity." (*Id.* ¶ 26.)

These allegations are almost identical to those Escano made in *Symmetry*, where the defendants also argued that Escano failed to plausibly allege that the telemarketing service ("SFG") made the subject calls. *See Symmetry*, 2022 WL 2072875, at *5. In that case, the Court found relevant the following allegations: "the calls were all related to life and health insurance[,] . . . the content of the calls was substantially similar enough that a reasonable person would identify

8

the communications as coming from the same entity or group of entities[,] . . . for each call in which [Escano] talked to a sales representative, the representative asked him for his full name, age, and zip code[,]" and the telemarketers only revealed the company's identity "if Escano retroactively agreed to [a] TCPA violation." *Id.* (quotation marks and citations omitted). "Considering the facts as a whole and accepting them as true, the [*Symmetry*] court [found] that Escano [had] plausibly alleged that SFG was behind the relevant calls." *Id.*

Defendants argue *Symmetry* is distinguishable, because there, Escano "definitively allege[d] that only one defendant made the calls at issue[,]" whereas here, Escano "seek[s] to allege that all of the Defendants made all of the subject calls." (Doc. 20 at 11.) As the Court notes below in section III(E), Escano cannot maintain a claim based on the conclusory allegations that "Defendants," generally, are liable "because they made the calls." (*See* Doc. 9 ¶ 63.) Escano's allegations regarding ISI specifically, though, are sufficiently supported. It is true Escano asserts facts to show only one phone call was admittedly made by an ISI representative.[3] Considering the facts in the Second Amended Complaint as a whole, however, Escano plausibly alleges that all calls were similar and thus made by the same entity. At this stage, that is enough. The Court recommends denying the motion to dismiss on this issue.

### C. Escano fails to sufficiently allege that Dudarev is vicariously liable for the calls.

Defendants contend that Escano fails to adequately plead an agency relationship between Dudarev and ISI sufficient to hold Dudarev liable. (*Id.*) Escano responds simply, "the Complaint

---

[3] Defendants further complain that Escano fails to allege the representative's name or other identifying information. (*See* Doc. 13 at 13.) Defendants fail to offer authority to support a finding that Escano needs such specific information at this stage when his allegations establish the representative stated she was calling from "Insurance Supermarket" and emailed Escano information containing ISI's and GTL's branding and logos. (*See* Doc. 9 ¶¶ 27–28.) In fact, Defendants cite no authority on this issue at all.

alleges that [Dudarev] is vicariously liable under the theory of respondeat superior."[4] (Doc. 17 at 11 (citing Doc. 9 ¶ 54).) The doctrine of respondeat superior allows "an employer [or principal to] be held vicariously liable for the negligent actions of an employee [or agent] who is acting within the scope of his employment." *Lessard v. Coronado Paint & Decorating Ctr., Inc.*, 168 P.3d 155, 160 (N.M. Ct. App. 2007) (citing *Medina v. Graham's Cowboys, Inc.*, 827 P.2d 859, 863 (N.M. Ct. App. 1992)); *see also Tercero v. Roman Catholic Diocese of Norwich, Conn.*, 48 P.3d 50, 58 (N.M. 2002) (noting that "the liability of a principal for the tortious act of an agent is the same as the liability of an employer for the tortious act of an employee" and that "[s]uch liability is grounded on the maxim 'respondeat superior'") (citations omitted). Although Escano does little to support this claim in his complaint (*see* Doc. 9 ¶¶ 52–54) or to develop the argument in his response brief (Doc. 17 at 11), it appears he seeks to hold Dudarev liable as *principal* for any acts done by ISI as Dudarev's *agent*.

As Defendants note in their motion, "[a] defendant is vicariously liable for violations of the TCPA where common law principles of agency would impose it." (Doc. 13 at 8 (quoting *Childress v. Liberty Mut. Ins. Co.*, No. 17-CV-1051 MV/KBM, 2018 WL 4684209, at *3 (D.N.M. Sept. 28, 2018)).) *See also Symmetry*, 2022 WL 2072875, at *6 (noting "vicarious liability [may be] imposed 'under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers'" and, "[s]imilarly, New Mexico Law recognizes vicarious liability and agency theory") (quotations omitted). To the extent Escano alleges that Dudarev is vicariously liable for ISI's conduct based on respondeat superior, he fails

---

[4] Escano cites *RCI* and asserts that in that case, the Court "den[ied the] individual defendant's motion to dismiss when the complaint alleged he 'directed his . . . employees to place the calls, and entered into agreements with [other defendants] in furtherance of their telemarketing scheme.'" (*Id.* (quoting *RCI*, 2022 WL 17251273, at *7).) Escano fails to establish that *RCI* supports his theory of liability. The sentence Escano quotes is simply a factual contention the Court quoted in outlining the parties' arguments on personal jurisdiction. *See RCI*, 2022 WL 17251273, at *7.

to allege facts sufficient to establish that ISI acted as Dudarev's agent. "An agent is a person who, by agreement with another called the principal, represents the principal in dealings with third persons or transacts some other business, manages some affair or does some service for the principal, with or without compensation." *Robertson v. Carmel Builders Real Est.*, 92 P.3d 653, 660 (N.M. Ct. App. 2004) (quoting *Madsen v. Scott*, 992 P.2d 268, 270 (N.M. 1999)). "If [ISI] was [Dudarev's] agent, [Dudarev] may be liable for [ISI's conduct] if [ISI] was acting within the scope of [its] agency and [Dudarev] had the right to control the manner in which the details of the work were to be performed at the time of the [subject calls]." *See Madsen*, 992 P.2d at 270 (citing UJI 13-402 NMRA 1999).

Escano makes remarkably few factual allegations regarding Dudarev. The only fact that arguably supports Escano's theory is the largely conclusory allegation that ISI acted under Dudarev's direction and control. (Doc. 9 ¶ 53.) Otherwise, Escano alleges only that Dudarev is an employee and principal officer of ISI and that he "entered into agreements *on behalf of ISI* that led to the telephone calls at issue." (*Id.* ¶¶ 6, 52–53 (emphasis added).) Even construing Escano's complaint liberally, the Court cannot find Escano has alleged facts to show ISI acted as Dudarev's agent. As a result, Escano's attempt to hold Dudarev vicariously liable under a theory of respondeat superior necessarily fails.[5] In short, the Court recommends granting the motion to dismiss the vicarious liability claims against Dudarev.

### D. Escano sufficiently alleges facts to bring vicarious liability claims against GTL.

Defendants argue that Escano fails to plausibly allege that GTL is vicariously liable for the calls. (Doc. 13 at 9.) GTL "may be found to be vicariously liable under one of three theories: actual

---

[5] Rather, the facts support a theory opposite to the one Escano espouses; that is, they suggest that Dudarev acted as agent for ISI, the principal.

authority . . ., apparent authority, or ratification." *Symmetry*, 2022 WL 2072875, at *6 (citations omitted). Escano contends that GTL is vicariously liable under the theories of both actual and apparent authority. (Doc. 17 at 8–10.) "Notably, a plaintiff is only required to demonstrate one of the common law agency theories in order to hold a defendant vicariously [liable] for another defendant's alleged TCPA violations." *Symmetry*, 2022 WL 2072875, at *6 (quotation omitted).

### 1. Actual Authority

ISI has actual authority to act on GTL's behalf if "it reasonably believes, in accordance with [GTL's] manifestations to [ISI], that [GTL] wishes [ISI] to engage in an action." *See Symmetry*, 2022 WL 2072875, at *6 (quoting *Mohon v. Agentra LLC*, 400 F. Supp. 3d 1189, 1235 (D.N.M. 2019)). "In *Abramson v. Agentra, LLC*, for example, the court found that the plaintiff's claims of vicarious liability, based on a theory of actual authority, survived a motion to dismiss where the plaintiff pled that the defendant 'outsource[d] its telemarketing and authorize[d] those third-parties to enter into contracts on its behalf.'" *Id.* (quoting *Abramson*, No. CV 18-615, 2018 WL 6617819, at *4 (W.D. Pa. Dec. 18, 2018). In *Symmetry*, the Court found that Escano plausibly alleged facts to show that MOIC, a corporation that sold insurance plans, had actual authority over the telemarketing service (SFG), where the complaint alleged: "MOIC authorized SFG salespersons to represent themselves as agents of MOIC to potential customers and to sell MOIC's insurance plans via telephone on its behalf; published marketing material which states that SFG salespersons are agents of MOIC; and paid SFG sales commissions for the insurance enrollments produced by SFG." (*See id.* (quotation marks, brackets, and citations omitted)).

Here, Escano asserts that "GTL had an agreement with ISI whereby GTL would pay ISI for the customers [ISI] enrolled in GTL's insurance plans." (Doc. 9 ¶ 62.) "GTL authorized ISI salespersons to represent themselves as agents of GTL to potential customers" when selling the

insurance plans, and GTL paid ISI commissions for all insurance enrollments ISI produced. (*Id.* ¶¶ 58, 60, 62.) Escano further alleges that "GTL knew or should have known of ISI's violative business practices[,]" because GTL knew ISI could not have enrolled the volume of customers it did without using an ATDS to call customers. (*Id.* ¶¶ 56–58.) The Court finds this is sufficient to show ISI had actual authority to act as an agent for GTL.

### 2. Apparent Authority

"Apparent authority is the power 'to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations.'" *Symmetry*, 2022 WL 2072875, at *7 (quoting *DeClements v. RE/MAX LLC*, No. 1:20-CV-02075 DDD/SKC, 2020 WL 9259326, at *3 (D. Colo. Oct. 13, 2020)); *see also* Restatement (Third) Of Agency § 2.03. In a declaratory ruling, "the FCC provided a useful, but not exhaustive, list of 'examples of evidence that may demonstrate that the telemarketer is the seller's authorized representative with apparent authority to make the seller vicariously liable for the telemarketer's section 227(b) violations.'" *Id.* (quoting *In re Joint Petition Filed by Dish Network, LLC*, 28 F.C.C. Rcd. 6574, 6592 (2013)).

> These examples include: (1) "evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control," such as "access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information"; (2) "[t]he ability by the outside sales entity to enter consumer information into the seller's sales or customer systems"; (3) "the authority to use the seller's trade name, trademark and service mark"; (4) evidence that "the seller approved, wrote or reviewed the outside entity's telemarketing scripts"; and (5) a showing that "the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct."

*Id.* (quoting *Dish Network*, 288 F.C.C. at 6592). Escano discusses *Dish Network* and asserts that the Complaint establishes the third and fifth examples. (Doc. 17 at 9–10.) That is, the Complaint

13

shows that GTL gave ISI the authority to use its name, branding, and logo, as they were present on the email the ISI sales representative sent to Escano. (*See id.* (citing Doc. 9 ¶ 28).) And the complaint demonstrates GTL knew or should have known ISI was violating the TCPA because of the volume of enrollments produced. (*See id.* (citing Doc. 9 ¶¶ 56–58).) The Court finds that the first example is also present, as Escano alleges that GTL authorized ISI to sell insurance on its behalf and "[t]o that end, [ISI] salespersons had access to [GTL] marketing material." *See Symmetry*, 2022 WL 2072875, at *7. (*See also* Doc. 9 ¶ 28.)

Defendants argue that Escano's allegations are conclusory and insufficient to "plausibly show[] some affirmative act by GTL to impose liability." (Doc. 20 at 9.) They rely on *Barker v. Sunrun Inc.*, No. CV 18-855 KG/LF, 2019 WL 1983291, at *2 (D.N.M. Apr. 29, 2019). *Barker* is inapposite. In that case, the plaintiff alleged that he received telemarketing calls from several companies including Smart Home Solar, Solar Works 3, Solar Energy Works, and Solar Works Energy. *See id.* The plaintiff named still another company, Sunrun, as a defendant, and summarily claimed "that the offending calls were directed by or at the behest of Sunrun and that these callers were in an alleged agency relationship with Sunrun . . . ." *Id.* at *4. The court granted Sunrun's motion to dismiss on the basis that the plaintiff failed to assert facts to show "any action or omission by Sunrun that could connect its conduct to the claimed wrongful acts." *See id.* In contrast, Escano alleges facts regarding GTL's own conduct that connects GTL to ISI's violative acts. Accordingly, the Court recommends denying the motion on this issue.

### E. Escano has not shown that GTL or Dudarev are directly liable for the calls.

Defendants argue that Escano "contradicts himself wherein on one hand he alleges that Defendant ISI made the calls but on the other hand GTL made the calls . . . ." (Doc. 13 at 10.) Indeed, in his "alternative liability" count, Escano states that he "alternatively alleges that the

Defendants are liable for the calls because they made the calls." (Doc. 9 ¶ 63.) Escano "concedes that he has alleged primarily that GTL is vicariously liable for the calls, while alleging GTL's direct liability in the alternative." (Doc. 17 at 7.)

"Regarding direct liability, [t]he plain language of section 227(b)(1)(A)(iii) imposes liability upon persons that 'make' a telephone call or text." *Symmetry*, 2022 WL 2072875, at *6 (quoting *Childress*, 2018 WL 4684209, at *3) (quotation marks omitted). "Courts interpreting this provision have held that the verb 'make' imposes civil liability only on the party that places the call or text." *Id.* (quoting *Childress*, 2018 WL 4684209, at *3) (quotation marks omitted). Yet Escano fails to plead facts to support a finding that either GTL or Dudarev *placed* the calls. Rather, he summarily asserts that "Defendants," generally, are liable "because they made the calls[,]" and "because any of the Defendants directed and controlled another Defendant . . . to place the calls in the manner alleged." (Doc. 9 ¶ 63–64.) Unlike the factual allegations Escano offers in support of a finding that ISI was responsible for the calls, these paragraphs assert the sort of "threadbare recitals of a cause of action's elements" that are insufficient to withstand a motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citation omitted). The Court recommends granting the motion to dismiss the claim for direct liability with respect to both GTL and Dudarev.

IV. **Conclusion**

The Court finds Escano plausibly alleged ISI used an ATDS to place the calls at issue in the complaint. Accordingly, the Court recommends denying in part the motion to dismiss and allowing the claims against ISI to go forward.

The Court finds Escano fails to allege facts sufficient to show that Dudarev is directly or vicariously liable for the calls, or that GTL is directly liable for the calls. Thus, the Court recommends granting in part the motion to dismiss, dismissing Dudarev as a defendant and

dismissing any directly liability claim against GTL.

**IT IS HEREBY RECOMMENDED** that Defendants' Motion to Dismiss be **GRANTED in part** and **DENIED in part** as outlined in this PFRD, and that the following claims be **DISMISSED without prejudice**: (1) all claims against Dudarev (Doc. 9 ¶¶ 52–54, 63–65); and (2) the direct liability claim pleaded in the alternative against GTL (*id.* ¶¶ 63–65).

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the 14-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
DAMIAN L. MARTINEZ
UNITED STATES MAGISTRATE JUDGE